UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY,<br><br>                    Plaintiff,<br>        v.<br><br>VIEW POINT BUILDERS, INC., et al.,<br><br>                    Defendants. | CASE NO. C20-0221JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

## I.   INTRODUCTION

Before the court is Plaintiff Developers Surety and Indemnity Company's ("DSIC") motion for default judgment against Defendants View Point Builders, Inc., View Point Builders, LLC, and Steven Swigert dba View Point Builders (collectively, "View Point"). (Mot. (Dkt. # 12).)  The motion is unopposed. (*See generally* Dkt.)  The court has considered the motion, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS DSIC's motion.

ORDER - 1

## II.  BACKGROUND

On February 12, 2020, DSIC filed a complaint seeking a declaration that it is not obligated to defend or indemnify View Point under Commercial General Liability Policy No. BIS00024041-01 ("the Policy"), which was in effect from December 15, 2015, to December 15, 2016, in a lawsuit filed by John Bennett and Judy Bennett ("the Bennetts") in the Skagit County Superior Court.[1]  (Compl. (Dkt. # 1) ¶¶ 3.2, 4.3, 6.1; *see generally* 5/8/20 Knowles Decl. (Dkt. # 13) ¶ 5, Ex. E[2] ("Bennett Compl."); *id.* ¶ 13, Ex. M[3] ("Policy").)

Mr. Swigert is a general construction contractor who controls both View Point Builders, Inc., and View Point Builders, LLC, and "blurs their operations."  (Compl. ¶¶ 1.4, 4.2.)  Around February 2012, the Bennetts hired View Point to remodel their residence, which involved "installing new roofing, windows, exterior stucco, and related weatherproofing."  (Compl. ¶¶ 4.2, 4.4.)  It is unclear when exactly View Point completed its work, but there is no allegation or evidence that View Point's work extended beyond 2013.  (*See id.* ¶ 4.2 (alleging that View Point completed its work by April 30, 2012); 5/8/20 Knowles Decl. ¶ 2, Ex. B ("Bennett Dep.") at 53:13-14 (stating

//

---

[1] The Bennetts' lawsuit is captioned *Bennett v. Swigert, et al.*, Skagit County Superior Court Case No. 18-201508-29.

[2] All references throughout this order will use the page numbers provided by the court's electronic filing system ("ECF") unless otherwise noted.  The Bennetts' amended complaint is located on page 51 of Mr. Knowles' declaration.

[3] This exhibit contains the text of the Policy mentioned above.

that View Point worked into 2013); *id.* ¶ 3, Ex. C ("Swigert Dep.") at 76:13-17 (stating that View Point completed the work by November 2012).)

On December 27, 2018, approximately five to six years after View Point finished the remodel, the Bennetts filed their initial complaint against View Point in the Skagit County Superior Court.  (5/8/20 Knowles Decl. ¶ 4, Ex. D.)  The Bennetts filed an amended complaint on February 22, 2019.  (*See* Bennett Compl.).  The Bennetts seek no less than $250,000.00 in damages for breach of contract, fraudulent concealment, and violation of the Washington Consumer Protection Act, RCW ch. 19.86.  (Compl. ¶ 4.3; *see generally* Bennett Compl.)  The Bennetts allege that View Point's work does not comply with the Washington Building Code and that improperly installed windows and exterior stucco caused water to leak into the residence.  (Bennett Compl. ¶ 21; *see* Compl. ¶ 4.6.)

The Policy provides up to $1,000,000.00 in coverage for each "occurrence" with a general aggregate limit of $2,000,000.00 and a completed operations limit of $2,000,000.00.  (Policy at 101; Compl. ¶ 3.3.)  The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Policy at 129; Compl. ¶ 3.7.)  The Policy states that "[DSIC] will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply."  (Policy at 115; Compl. ¶ 3.4.)  "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property."  (Policy at 129; Compl. ¶ 3.7.)  The Policy contains several exclusions, including the Designated Work Exclusion (Policy at 140), the

1  Non-Compliance with Building Codes Exclusion (*id.* at 172), and the Continuous or

2  Progressive Injury and Damage Exclusion (*id.* at 189).

3  On March 1, 2020, DSIC served copies of the summons and complaint on View

4  Point (1st Aff. (Dkt. # 4); 2d Aff. (Dkt. # 5)), but View Point has not responded to the

5  complaint or made any attempt to contest DSIC's suit (4/6/20 Knowles Decl. (Dkt. # 7)

6  ¶ 6). Upon DSIC's motion, the Clerk of the Court entered default. (5/1/20 Order (Dkt.

7  # 11); 4/10/20 Order (Dkt. # 8).) There is no evidence on the docket that View Point

8  intends to contest DSIC's claim or appear before the court. (*See generally* Dkt.)

9  In its present motion for a default judgment, DSIC seeks a declaration that it is not

10  obligated to defend or indemnify View Point under the Policy for three independent

11  reasons: (1) the Policy's Designated Work Exclusion applies; (2) the Policy's

12  Non-Compliance with Building Codes Exclusion applies; and (3) the Policy's Continuous

13  or Progressive Injury and Damage Exclusion applies. (Mot. at 11; *see* Policy at 140, 172,

14  189.) The court now considers DSIC's motion.

### III.  ANALYSIS

**A.  Legal Standard**

17  There are two steps to obtaining a default judgment. First, after a party fails to

18  appear, the clerk enters that party's default upon the opposing party's motion for entry of

19  default. Fed. R. Civ. P. 55(a); Local Rules W.D. Wash. LCR 55(a). Second, upon a

20  party's request or motion, the court may exercise its discretion to grant default judgment.

21  Fed. R. Civ. P. 55(b)(2); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

22  Default judgment is appropriate only when the well-pleaded factual allegations of the

complaint are "sufficient to establish [a] plaintiff's entitlement to a judgment under the applicable law." *TransAmerica Life Ins. Co. v. Young*, No. 2:14-cv-2314 MCE AC, 2015 U.S. Dist. LEXIS 139320, at *4 (E.D. Cal. Oct. 13, 2015) (citing *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 855 (9th Cir. 2007)). To determine whether the plaintiff is entitled to judgment, "[t]he court must accept all well-pled allegations of the complaint as established fact, except allegations related to the amount of damages." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

If the complaint sufficiently establishes the plaintiff's entitlement to judgment, the court considers the seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), to determine whether to exercise its discretion to grant default judgment. The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

In the present matter, DSIC asserts that it is entitled to a declaratory judgment that it is not obligated to defend or indemnify View Point because the three aforementioned exclusions in the Policy "each wholly bar coverage for the Bennet [sic] suit." (Mot. at 11.) The court first considers whether DSIC is entitled to the declaratory judgment it seeks based on the well-pleaded allegations of its complaint. *See infra* §§ III.B.1-3. If

1 the well-pleaded allegations establish DSIC's entitlement to a declaratory judgment, the
2 court next considers the seven *Eitel* factors to determine whether to grant default
3 judgment. *See infra* § III.B.4.

**B.     Whether the Policy's Exclusions Bar Coverage**

In Washington, the interpretation of an insurance policy is a question of law. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 276 P.3d 300, 305 (Wash. 2012). "Courts in Washington construe insurance policies as the average person purchasing insurance would, giving the language 'a fair, reasonable, and sensible construction.'" *Id.* (citing *Key Tronic Corp. v. Aetna (Cigna) Fire Underwriters Ins. Co.*, 881 P.2d 201, 206-07 (Wash. 1994)). Given that "[e]xclusions from insurance coverage are contrary to the fundamental protective purpose of insurance," courts "construe exclusions strictly against the insurer." *Vision*, 276 P.3d at 306 (citing *State Farm Fire & Cas. Co. v. Ham & Rye, LLC*, 174 P.3d 1175, 1179 (Wash. Ct. App. 2007)). In Washington, courts do not extend exclusions "beyond their clear and unequivocal meaning." *Vision*, 276 P.3d at 306.

In light of the foregoing principles, the court now considers the allegations regarding the Policy's relevant exclusions to determine whether DSIC is obligated to defend or indemnify View Point in the Bennetts' suit.

    1.   <u>Whether the Designated Work Exclusion Bars Coverage</u>

The Policy's Designated Work Exclusion states that "[t]his insurance does not apply to . . . 'property damage'" arising out of "[a]ll work completed or 'abandoned' prior to the inception date of the policy." (Policy at 140; Compl. ¶ 3.5.) The complaint alleges that "all of View Point Builders' work, including any subcontractor, warranty, or

1 repair work, was completed by April 30, 2012." (Compl. ¶ 4.2.)  As noted above,

2 although there is some evidence that View Point's work extended later into 2012 or 2013

3 (*see* Bennett Dep. at 53:13-14; Swigert Dep. at 76:13-17), there is no allegation or any

4 evidence that View Point's work extended beyond 2013.  The complaint further alleges

5 that the Policy's inception date was not until December 15, 2015, and the Policy was in

6 effect until December 15, 2016.  (Compl. ¶ 3.2; Policy at 97.)  DSIC maintains that the

7 Designated Work Exclusion "precludes coverage for all of the Bennetts' claimed

8 damages because View Point Builders, or its subcontractors, completed all of their work,

9 including warranty or repair work, prior to the Policy inception on December 15, 2015."

10 (Compl. ¶ 5.3.)  The court agrees.

11       Based on the well-pleaded allegations in DSIC's complaint, the court concludes

12 that the Policy's Designated Work Exclusion clearly and unequivocally bars coverage in

13 this case.  DSIC is not obligated to defend or indemnify View Point in the Bennetts' suit

14 because the well-pleaded allegations in DSIC's complaint establish that View Point

15 completed its remodel of the Bennetts' residence years before the Policy's inception date,

16 meaning DSIC owes no coverage under the Policy.

17       2.  <u>Whether the Non-Compliance with Building Codes Exclusion Bars Coverage</u>

18       The Policy's Non-Compliance with Building Codes Exclusion states that the

19 Policy does not apply to "'property damage' . . . arising out of, caused by, or attributable

20 to, whether in whole or in part, the design, construction, fabrication, maintenance or

21 repair, including remodeling, of any structure in a manner not in compliance with the

22 controlling building code." (Policy at 172; Compl. ¶ 3.5.)  DSIC alleges that "View Point

1 Builders' work is . . . purportedly inconsistent with controlling building codes" and that
2 "much of View Point Builders and/or its subcontractors' work is defective, including
3 improperly installed roofing, windows, and exterior siding, [which] caused property
4 damage to the [r]esidence, including water damage." (Compl. ¶ 4.6 (referencing the
5 allegations in the Bennetts' complaint); *see generally* Bennett Compl.) Moreover, DSIC
6 asserts that "some or all of View Point Builders' . . . work was code non-compliant;
7 therefore, the Non-Compliance with Building Codes [E]xclusion bars coverage for the
8 Bennetts' claimed damages." (Compl. ¶ 6.1.) The court agrees.

Based on the well-pleaded allegations in DSIC's complaint, the court concludes that the Policy's Non-Compliance with Building Codes Exclusion clearly and unequivocally bars coverage in this case. DSIC is not obligated to defend or indemnify View Point in the Bennetts' suit because the well-pleaded allegations in DSIC's complaint establish that much of View Point's work was, in whole or in part, defective and non-compliant with the controlling building code, meaning DSIC owes no coverage under the Policy.

3. <u>Whether the Continuous or Progressive Injury and Damage Exclusion Bars Coverage</u>

The Policy's Continuous or Progressive Injury and Damage Exclusion states that the Policy does not apply to "'property damage'" that "first existed, or was alleged to have first existed, prior to the policy period" even if the damage "continued during the policy period." (Policy at 189; Compl. ¶ 3.5.) The exclusion also bars coverage for damage that "was caused by, or was alleged to have been caused by, conditions that

existed prior to the policy period." (Policy at 189; Compl. ¶ 3.5.) DSIC alleges that View Point's defective work on the roofing, windows, and siding caused water damage to the Bennetts' residence. (*See* Compl. ¶ 4.6.) Although View Point may have at some point returned to repair parts of the defective work, "the repairs were apparently insufficient or unsuccessful," meaning that the work was defective at the time View Point finished the remodel. (*See id.* ¶ 4.7.) DSIC alleges that View Point finished its work in April 2012,[4] so the defective work is a condition that existed prior to the policy period. (*See id.* ¶ 4.2.) DSIC maintains "[t]hat all 'continuous or progressive' 'property damage' first existed prior to the Policy's inception and/or was caused by construction defects existing prior to the Policy's inception; therefore the Continuous or Progressive Injury and Damage [E]xclusion bars coverage." (*Id.* ¶ 6.1.) The court agrees.

Based on the well-pleaded allegations in DSIC's complaint, the court concludes that the Policy's Continuous or Progressive Injury and Damage Exclusion clearly and unequivocally bars coverage in this case. DSIC is not obligated to defend or indemnify View Point in the Bennetts' suit because the well-pleaded allegations in DSIC's complaint establish that the relevant damages to the Bennetts' residence were caused by construction defects that existed years before the Policy's inception date, meaning DSIC owes no coverage under the Policy.

//

//

---

[4] As noted above, there is evidence that View Point's work may have continued later into 2012 or 2013 (*see* Bennett Dep. at 53:13-14; Swigert Dep. at 76:13-17), but there is no evidence or allegation that View Point's work extended beyond 2013.

1        4.  <u>Whether the *Eitel* Factors Weigh in Favor of Default Judgment</u>

2         Having concluded that the well-pleaded allegations in the complaint establish

3   DSIC's entitlement to a declaration that it is not obligated to defend or indemnify View

4   Point under the Policy on three separate grounds, *see supra* §§ III.B.1-3, the court now

5   considers the *Eitel* factors to decide whether to exercise its discretion to grant default

6   judgment for DSIC.  *See Eitel*, 782 F.2d at 1471-72.

7            *a.  Factor One:  Possibility of Prejudice*

8         View Point has not responded to the complaint or indicated any intent to contest

9   DSIC's claim.  (*See generally* Dkt.)  Because View Point has failed to appear, DSIC has

10  "no other recourse to secure a ruling regarding its liability" absent a default judgment.

11  *Colony Ins. Co. v. Thomas*, No. CV 10-04218 MMM (SHx), 2011 U.S. Dist. LEXIS

12  162730, at *9 (C.D. Cal. Jan. 24, 2011).  Specifically, DSIC "will be unable to determine

13  its obligations" to View Point under the Policy without a grant of default judgment.  *Id.*

14  Thus, the first *Eitel* factor favors default judgment.

15           *b.  Factors Two and Three:  Merits and Sufficiency of the Complaint*

16        Courts often consider the second and third *Eitel* factors together.  *See Curtis v.*

17  *Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014); *Colony*, 2011

18  U.S. Dist. LEXIS 162730, at *10.  These factors "require that a plaintiff state a claim on

19  which [it] may recover."  *Colony*, 2011 U.S. Dist. LEXIS 162730, at *10 (quoting

20  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)); *see also*

21  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  The complaint's well-pleaded

22  allegations establish that DSIC is not obligated to defend or indemnify View Point

1 because the Policy's Designated Work Exclusion, Non-Compliance with Building Codes

2 Exclusion, and Continuous or Progressive Injury and Damage Exclusion each completely

3 bar coverage. *See supra* §§ III.B.1-3. Thus, the second and third *Eitel* factors favor

4 default judgment.

   *c. Factor Four: Sum of Money at Stake*

6 Although DSIC is not seeking damages, it is requesting a declaration that it is not

7 obligated to defend or indemnify View Point in a suit seeking no less than $250,000.00 in

8 damages. (*See* Compl. ¶ 4.3; Bennett Compl. ¶ 47.) However, DSIC has established that

9 it does not owe View Point coverage regardless of the Bennetts' potential damages on

10 three separate grounds. *See supra* §§ III.B.1-3. Thus, the court considers this factor to be

11 neutral and concludes that it does not affect the outcome of DSIC's motion.

   *d. Factor Five: Possibility of a Dispute Concerning Material Facts*

13 A fact is "material" if it "might affect the outcome of the suit." *Anderson v.*

14 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Despite proper service, View Point has

15 failed to respond to DSIC's complaint or appear before the court in any manner. (*See*

16 5/1/20 Order; 4/10/20 Order; *see generally* Dkt.) Because View Point has not appeared,

17 any disputes of material fact would arise from DSIC's filings. Although it is unclear

18 when View Point finally completed its work on the Bennetts' residence, the account most

19 favorable to View Point still puts the project's end date in 2013, years before the Policy

20 incepted. (*See* Bennett Dep. at 53:13-14.) Thus, there is no dispute of material fact

21 regarding when View Point finished its work, and there is no evidence in the record that

22 View Point completed its work in compliance with the controlling building codes. (*See*

1  *generally* Dkt.)  Thus, based on the filings, there is no dispute concerning material facts,

2  meaning this factor favors default judgment.

3        *e.  Factor Six:  Whether Default Was Due to Excusable Neglect*

4      View Point was properly served and was therefore aware of the charges filed

5  against it.  (*See* 1st Aff.; 2d Aff.; 5/1/20 Order; 4/10/20 Order.)  There is no evidence in

6  the record to suggest that Mr. Swigert is indigent or incapable of responding to DSIC's

7  complaint or appearing before the court.  Thus, this factor favors default judgment.

8        *f.  Factor Seven:  Policy Favoring Decisions on the Merits*

9      If a defendant fails to answer a plaintiff's complaint, "the seventh *Eitel* factor does

10  not preclude the entry of default judgment."  *Colony*, 2011 U.S. Dist. LEXIS 162730, at

11  *26.  Although policy favors decisions on the merits, the court "may consider [the]

12  [d]efendants' failure to respond . . . as admissions that the motions have merit."  *UN4*,

13  372 F. Supp. 3d at 1134 (citing Local Rules W.D. Wash. LCR 7(b)(2)).  "Moreover, [a]

14  [d]efendant's failure to answer [a] [p]laintiff's [c]omplaint makes a decision on the merits

15  impractical, if not impossible."  *PepsiCo*, 238 F. Supp. 2d at 1177.  Because View Point

16  has failed to respond to the complaint, this factor does not preclude the court from

17  granting default judgment.

18        *g.  Conclusion on the Eitel Factors*

19      The majority of the *Eitel* factors favor granting DSIC default judgment against

20  View Point.  Thus, the court GRANTS DSIC's motion for default judgment.

21  //

22  //

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS DSIC's motion for default judgment against View Point (Dkt. # 12). The court hereby enters a DECLARATORY JUDGMENT that DSIC is not obligated to defend or indemnify View Point in *Bennett v. Swigert, et al.*, Skagit County Superior Court Case No. 18-201508-29, under Commercial General Liability Policy No. BIS00024041-01, which was in effect from December 15, 2015, to December 15, 2016.

Dated this 17th day of June, 2020.

JAMES L. ROBART
United States District Judge